Case number 24-71-27. Director T. Angelo, et al., of Delance v. District of Columbia, et al., Mr. Lyon, for the Delance-Pacifica, for the Eppolese. Good morning, counsel. Mr. Lyon, please proceed when you're ready. Good morning, your honors. I've asked to reserve two minutes for rebuttal. Since Susan B. Anthony's list, no other circuit follows the Navigar-Segars rule, if they ever did, that standing in a pre-enforcement challenge to a criminal law, other than in the First Amendment context, requires a specific threat or the plaintiffs being uniquely targeted for enforcement. Indeed, four circuits have found standing in the exact circumstances of this case a challenge to a ban on carry or transport or on public transportation. And standing is uncontested in a fifth case, Kiptee v. Moore, in the Fourth Circuit. Conventional expectation that the law will be enforced constitutes substantial risk of enforcement to confer standing. It's time for this circuit to realize that intervening Supreme Court clarification and the overwhelming weight of authority from your sister circuits requires this court to recognize that the Navigar-Segars line is no longer good law, although, again, I believe that the cases are distinguishable. Everything you just said sounds like the first paragraph of an unbanked petition that we would take a look at. And I'm just wondering, for panel purposes, what's your best argument that the Navigar-Segars cases that you rightly started out by referencing isn't binding on us? Well, one argument is that they're distinguishable, which we've made in the brief. Beyond that, it's not binding because intervening Supreme Court decisions have eviscerated the rationale of Navigar and Segars. And if you don't believe that, at the very least, undercut it. And the weight of authority from all the other circuits is inconsistent with Navigar and Segars. If they're distinguishable, why on earth would we talk about whether they should be overruled or talk about what the Supreme Court has said or done? If they're distinguishable, then we don't have to wade into that constitutional question. Well, exactly, Your Honor. But I can't assume that you'll agree with me on that, so I have to make every argument that I have. You shouldn't underestimate your powers of persuasion. Good point, Your Honor. So Navigar, just like other circuits, has been struggling with what the Supreme Court has meant and has continued to repeat. And that is, what is the test for a credible threat of enforcement? And I think the Supreme Court has said, as this Court has said, the mere fact that someone wants to do something and there's a statute out there that says you can't isn't enough. Now, your briefs object to the what more was required in Navigar and Segars in some subsequent cases. And if you don't want that what more, what is the what more that you propose to make something transform from statute exists out there, prohibits something, I don't like that, I'd like to do it, to a credible threat of enforcement? Well, Your Honor, I might disagree with you a bit because the Supreme Court has said that there is a risk unless the government has disclaimed the intent to prosecute or the law has fallen into disuse. Substantial risk under Dry House. Under Susan B. Anthony, it is a substantial risk. What makes something a substantial risk? What makes something a credible threat? Is it just the existence of a statute that says you can't do this? Well, that appeared to be the case in American booksellers, Your Honor. In which your position is, you know, I think they've been visited by some agents in American booksellers. So what is the legal test you're proposing in lieu of the opinions you disagree with? Establish, you can call it substantial risk of prosecution or credible threat of prosecution, whichever words you want to use. Well, I guess I would say, again, going back to the Supreme Court, unless the threat is wholly speculative or the government. Substituting another word for undefined word for this one. So what makes it not wholly, what shows us that it's not speculative that you will be arrested if you engage in this activity? Well, one, the district vigorously enforces its gun laws. There's no doubt about that. There have been more than we documented more than 72 arrests for carrying a firearm in Metro. Police have. What time period was that? I think that was over a five year period, Your Honor. How many people rode the Metro on that five year time period? Probably millions, Your Honor. 72 out of millions. But we don't. That's a substantial risk. It is. I don't have a lot of things. Your Honor, there is a substantial risk if my if my plaintiffs ride the Metro carrying their firearms. For one, there could be inadvertent disclosure of the firearm. If they bend over to pick up something, somebody could bump into them. They can completely control. Possibly, but someone could bump into them, which they can't control. And there are police techniques designed to determine whether someone is carrying a gun. The district uses those techniques to arrest people carrying illegal concealed firearms every day. Moreover, Metro, if it's only 72 out of millions. I mean, you have to the enforcement of this law, which is one about unless you're talking about on buses and things like that, too. Again, Your Honor, I would suggest that license concealed carriers don't violate the law. As my clients have said here, they will not intentionally violate the law. But that doesn't mean that their rights are not being. I completely understand that point. It's just I feel like. We're getting nowhere on the question of what the right legal test is in your view. You told us what you think the wrong legal test is. I don't know what the right one is. It seems to me to be coming down to there's a law. Rarely enforced. And we don't like it and we want to engage in that conduct. Well, Your Honor, in the first ever said that that amounts to a credible threat or a substantial risk. And in the First Amendment context, we assume a conventional expectation that the law will be enforced. And that is enough. And there is no there is no basis to make a distinction between the First Amendment and any other amendment. As the court has said in McDonald and in Berlin and most recently in whole whole woman's health, we do not treat rights. We do not treat rights differently. And in here, there is no other way that my clients could contest this law that is prohibiting them from carrying on the metro. What would you want them to do? Get arrested? That's that's the only way. Just to be clear. So your position is that the test is there is a statute. That outlaws something my clients wish to engage in that activity, and that is enough to establish a live statute on the books. That is enough to establish and it's it's enforced 72 out of multiple millions of times. And that are against 72 out of multiple millions of people. And that is I just want to make sure I'm being fair to what your legal position is, that that is a substantial risk. Incredible threat of enforcement. Yes. Well, unfortunate challenge. Yes, Your Honor. That's the law of every other circuit. That's that is the that is what I get out of whole women's health, where the where, in fact, the law at issue indicated it could not be enforced by any state actor. But the Supreme Court, nevertheless, found that case was was judiciable. So, as the Second Circuit has said, the test is a very low, very low hurdle. And certainly in this case, where there is no other way that my clients can vindicate their rights, I think that that test is wholly appropriate. Okay. Now, you'd reserved 2 minutes for rebuttal and we'll definitely give you the rebuttal. Thank you. But I want to make sure my colleagues don't have additional questions at this time. Okay. Mr. Patek. Thank you. May it please the court, Ashwin Patek, for all the appellees in this case. And I'll just dive right into where my friend left off, which is it does seem like there are 2 arguments that are being made here. Either Navigar, Seegers and Parker are distinguishable or that subsequent Supreme Court decisions have clearly eviscerated those decisions. And I think both of those contentions are wrong. And let me explain each of them. As to the distinguishable point, I think that Navigar, Seegers and Parker laid out a test. And this is directly responding to your point, Judge Millett, which is that you need to be uniquely targeted or singled out in order to bring a pre-enforcement challenge, a constitutional challenge to a criminal law. Now, that's the test that the court clearly articulated in Parker. It reiterated it in Ord, a case where the court actually found that there had been that kind of unique targeting or singling out. But it found that it didn't exist in Parker. And I have a tough time really seeing the difference between a case like this where all really the allegations that I'm seeing in the opening brief, page 4 of the opening brief, I think lays out their theory of this case, which is essentially that there's a law in the books. That law in the books is chilling their conduct, and therefore, they think they should be able to bring a pre-enforcement suit. I just don't think that's consistent with this court's precedence in that line of cases. And I think this court is bound to apply those precedents. Judge Srinivasan, you mentioned the appropriate avenue for kind of overturning those prior decisions would be in an en banc proceeding. I think that's correct, and I think that's sort of the avenue to go if the court is concerned about them, but not to kind of overrule them now before the panel stage. And that kind of turns me to the clearly eviscerated side of the argument, which is whether— Before we get there, can I ask a question? So it does seem to me that there's something that's different about this case. And that is, it's not just—we're not just left with a there's a law, we want to do it, we can't argument. They also say because of that law, we have on many occasions and will continue to have to take alternative forms of transportation that cost us more money. They allege a pocketbook injury that happened and is going to continue to happen. It's exactly what the law is intended to accomplish. Don't bring those here. Don't come here with those. Get yourself around some other way. So this law says that to them, and it has happened, and they say it will continue to happen. Now, in Virginia v. American Booksellers, it was a preliminary injunction case. And what the Supreme Court found relevant there was that they had incurred and were continuing to— were going to incur substantial compliance costs. And that was their injury. Why is that not sufficient here? Well, so a few responses to that. I think it is—I think that theory is inconsistent with NAVIGAR. So in NAVIGAR, there clearly was a financial cost to those gun manufacturers.  I get it was briefed. Our opinion does not analyze that issue at all. So now I'm raising it in this case to say, well, what if we analyze that? And I think another point here I would just note at the offset is— What cases have analyzed—have rested on—have addressed and said a pocketbook injury that has happened and will continue into the future, just like the expense— it was the expense of going through all their inventory in American Booksellers that was the injury. What case of ours has rejected that as a basis for standing under NAVIGAR and Seekers? I agree. I don't think any of that line of cases directly addresses that argument. But I think it's implicit in NAVIGAR. And I think that really— It's implicit in NAVIGAR. Well, I think it's— It just doesn't talk about it. Well, I think that's—I guess the way that I read NAVIGAR is that you have ATFA agents coming to gun manufacturers and basically saying there's a new law in the books that prohibits certain manufacturing that you do. They didn't argue for standing on that basis. They didn't—the court's opinion did not address an argument for standing on that basis in NAVIGAR. Or in Seekers that I saw. Or in Parker. And that wasn't the basis in Ord. And so I'm just asking, why is this—why would this even be a case for on bank? Because it seems to me there is standing because they have incurred the very financial costs that the law was designed to force them to incur. And that's an ongoing injury. I'm not saying they get damages, but it was sufficient for injunctive relief in American Booksellers. I don't know why it wouldn't—standing for injunctive relief, I don't know why it wouldn't be here. Do you have a way of distinguishing that? Well, American Books—I have a way of distinguishing American Booksellers, which is that it was a First Amendment case. And I'm happy to talk about the distinctions that I see between those two. But I do want to just directly take on the particular point that you're making, which is— and I think Judge Moss addressed this in his opinion, which is that basically you can't have an economic injury that is fully premised on actions you are taking based on this very same speculative harm that you're making in the first instance. So the speculative harm that you're suggesting is that there's a law in the books that's— I think the whole purpose of this law is to say if you want to travel with guns, do it on another form of transportation. Isn't that the whole point of this? Don't bring them here. If you've got guns and want to travel, do it on another form of transportation. Right, but I guess taking that other form of transportation is premised on you believing that there's a threat of prosecution. And if it's the same threat that you're asserting is based on the chill—the same chill that you're asserting based on the law that's on the books that you think is unconstitutional, I guess I just don't see the difference there. It's the same—it's the same threat, right? It's the same threat that— Nothing speculative. The law—this isn't a vague law. The terms are crystal clear. The fact that their conduct would fall within it is crystal clear, and the purpose of it is crystal clear. There's no daisy chain of inferences at all. This is a criminal prohibition meant to change behavior, and they have changed their behavior in response to it in a way that's harmful to them. It's out-of-pocket expenses. And I just don't understand why—you could say, well, it seems strange to me to have the district responding with the argument that, no, that's your fault for spending that money. Please ride the Metro with your guns. Well, I mean, I— They've got two options, ride the Metro with the guns or spend money. And your answer is, what are you worried about riding the Metro? I guess I don't see this as being that different than, I guess, the argument that the Supreme Court addressed in Clapper, right? I mean, that was a case where there were—they asserted that they were changing their behavior in response to a threat. I know, but they were doing their—the Supreme Court already found that it was sort of a speculative daisy chain of things. You had to assume this person was going to get tapped, and then this person would do, and then you would be here, and then this thing would here. There's nothing like that here. There's no chain. I guess there is. We're on. I guess— Law is accomplishing what it's meant to accomplish. I certainly understand the point, Judge Millett, and I'm not—and, you know, I agree. That is a distinction, and, you know, I don't want to kind of keep harping the point. I do think that there is a similarity in the argument that a person is taking action in response to what we see as, under this court's precedence, a speculative threat of prosecution, that you can't sort of manufacture standing based on that same threat that otherwise wouldn't be sufficient to bring you into court and give you Article III standing. And I do think that is a distinction. I guess, you know, this is a criminal law meant to change behavior, correct? That's correct. Is it meant to keep people with their guns off metro system transportation? It certainly is, and I don't— That's exactly the purpose of it. That's right, but I just don't see that— That costs people money. I don't see that as being much different from Parker, Seegers, and Navigar. I mean, those were criminal laws intended to change behavior. I mean, pocketbook injury is usually, you know, your ticket directly through Article III, as long as it's not self-inflicted. And this is not self-inflicted. It is inflicted by the statute. It's the whole purpose of the statute. I agree with that. And, you know, I just—I see that as being, you know, written through Navigar, even if the court didn't specifically say it, that that is, like, the premise of what the gun manufacturers were saying. Rejecting pocketbook injury is sufficient in a case where statute's crystal clear. This isn't someone where it's like, I'm not sure if we're covered or things are covered or not, which is just a whole different either standing or rightness issue. Crystal clear, straightforward. The fact that their behavior falls under it, again, no ambiguity whatsoever, nothing speculative about that, square on. And so the government has chosen to regulate us in this way, and we're incurring these expenses. I mean, I guess I agree with everything that you're saying, and I don't see how that makes this case distinguishable from Parker and Seegers and Navigar. but instead were a regulatory decision, and they fell within the class of regulated parties, and they wanted to bring a pre-enforcement challenge to agency regulation that has cost and is going to cost them much more money. Would they have standing under our precedent for criminal agency cases, agency regulatory cases? Yes, it seems like the answer is yes. How could Article III answer those two questions differently? I agree that that is a strange feature of this court's precedent. I'm not going to deny that. I mean, I do think there's actual government action, and there is clearly an Article III bar when it comes to agency challenges as well. So I don't want to suggest that there's nothing there. You clearly have to show that it's directly impacting you. But they don't have to wait until agency officials are ordering them to turn over documents and things like that. Yes, that is true. One of the ways you really get into court is go, this regulation is costing us money and is going to keep costing us money. Let me talk to you about that. And we go, okay. And there's nothing, you know, they're not misreading the statute or anything like that. No, I agree with that entirely, Judge Millett, and I think that, you know, I don't have a great answer for how those— Article III in both situations. It is the same Article III. That's exactly right. But I do think that Parker and Seeger specifically spoke to administrative cases and said that that is a different, you know, a carve-out essentially. And it also said the First Amendment is a carve-out, which, you know, does, I think, answer in part the Virginia v. American Booksellers case. And that is throughout this court's case law, whether it's the Woodhull decision from 2020— Usually when the First Amendment is a carve-out, it's because it's chilling. Right. No, it's going to cost us a lot of money to go through our inventory and figure out what we can display and not display. It's going to cost us an extraordinary amount of money, and that's what they were talking about. I mean, they said the requirements met here as the law is aimed directly at plaintiffs—this case, too— who, if their interpretation of the statute is correct—yeah— will have to take significant and costly compliance measures or risk criminal prosecution. Does that completely describe this case? In many ways, other than the First Amendment implications of that case, I think. But I agree entirely that— Besides Craig v. Boren, I don't even remember if that's a First Amendment case. I mean, I guess there does seem to be a First Amendment—you know, some distinctions in the First Amendment, right? Those over-breath claims are allowed in the First Amendment. They're not allowed with other constitutional rights. We're worried about prior risk claims.  I agree with that. Right. But I think most of the First Amendment cases were really about over-breath, and they were challenges where you really were worried about chill, whereas, as a general matter, even the Supreme Court in the Whole Woman's Health decision—five votes for the proposition that, and I'll quote, the chilling effect associated with a potentially unconstitutional law being on the books is insufficient to justify federal intervention in a pre-enforcement suit. But, you know, I understand the distinction that you're making, Judge Millett. I agree with you that the court did not directly address that argument in those prior cases. I see it as being implied, at least in NAVIGAR, but I don't want to push back too hard on that point. What do we do with the language in Bruin that says that Second Amendment rights are not second-class rights? Because if you draw a distinction between the First Amendment and other rights, I get that the cases have a kernel of that in them, and one could follow that in a certain way, but then there's language that says the one thing we don't do with the Second Amendment is treat that as differently. That's right. That language is there, Judge Srinivasan. I'd have a few responses to it. The first is that in the Whole Woman's Health decision, I think the court actually sort of implies that actually maybe it was wrong about the First Amendment. In other words, that everything needs to be leveled up. That's how I read that passage from Whole Woman's Health. So that may be where they're headed with this, and maybe some of the prior decisions that they've issued as to the First Amendment, they're going to think about revisiting, and that maybe they think that everything should be held to kind of a higher pre-enforcement standard. But I guess the other thing that I would say is that since both Bruin and Whole Woman's Health have come out, many other circuits have reasserted that there is this special First Amendment rule as to standing, and I think it's not necessarily inconsistent with the notion that the Second Amendment is not a second-class right, that you might just have a special standing pre-enforcement rule for First Amendment challenges in particular, given the nature of the injury that we think about in those cases. It's chill. It's about prior restraints. I mean, you can have a prior restraint in the Second Amendment context, right? That's licensing and registration. The Supreme Court has made clear that, you know, for the most part, those types of regimes are okay. You certainly can't have a license requirement to go out on the street and say what you want to say, put aside, you know, parades and things like that. But as a general matter, I do think the First Amendment is thought of as just a little bit different in that regard. And, of course, as I mentioned, you can bring an over-breath challenge in the First Amendment context. So, you know, I completely understand that language from Bruin. I just don't think that the court has fully fleshed out how that should impact pre-enforcement constitutional challenges and whether it really is true that the First Amendment and all of the other constitutional rights are exactly the same because I think that would be quite a sea change in the case law. So I just worry about sort of assuming that they've completely altered that without something a little bit more concrete. And then can I ask you in response to some of the colloquy that you have, Judge Millett, so is your understanding of Navigar and Seeger that the common assumption from those decisions is that conduct that would have been engaged in will not be engaged in because of the fear that it violates the law, but still there can't be a challenge? Yes, that is how I read. Yes, that's correct. That's how I read Seeger's, Parker, and Navigar. No, this is not that you're supposed to actually go ahead and engage in the conduct because the risk of prosecution is low. It's that where everybody's assuming that you're actually not going to engage in the conduct, conduct that you would like to engage in, but you're not going to engage in it. But still you haven't shown the degree of injury that's required to be able to vindicate your right to engage in the conduct. Correct. I think that is what those cases are saying. And they're saying you do need to be uniquely targeted or singled out in order to challenge the law. And that requires something more than just pure chill based on a law you believe to be unconstitutional being on the books. And, you know, I mean, even the Supreme Court has sort of reflected that principle, but hasn't obviously addressed it specifically. But this court, I think, has clearly addressed that in those decisions. And they've done it in the context of a few different laws. I mean, the trigger lock law in both Seeger's and Parker, I think, is very similar to the situation here. There was no administrative remedy in that situation. And nonetheless, the court said that you couldn't bring a pre-enforcement challenge to it, even though it clearly was affecting their conduct. If that's the assumption that we operate under, then if the plaintiff invokes something like a pocket pick injury, is the way you're conceptualizing that, that, look, there's all kinds of particularized injuries that could follow from the fact that you're not going to engage in the conduct that you'd like to engage in. But any of those kinds of particularized things you could point to are all derivative of the fact that you're not going to engage in the conduct to begin with. And once we know that that's not enough to give you standing, which we know from Navigar and Seeger, then it doesn't matter what the particular things may be that follow from that. We could talk about pocket pick injuries, which definitely have been recognized in the case as sufficient. But the lesson you're drawing from those decisions is that's just one specific example of a derivative injury that follows from the primary conduct that you're not going to engage in, which is you're not going to engage in the conduct that the law brings within its compass. That's correct, Joshua Nolas. And I think the point I was trying to make was that if the pocket pick injury is premised on the same chill that you were asserting in terms of seeking declaratory and injunctive relief, you can't sort of manufacture injury just by acting in a way that responds to that same chill. So it's not – it's sort of a redux of the same argument is how I read the case law. I don't want to suggest, obviously, that this court articulated the point that I just made and you just made in its decisions. But I do read that as – It wasn't made. I mean, it wasn't – it just – there was no discussion of that. Right. But I do think that that sort of flows from other – That's how you're theorizing it, at least. That's certainly how I'm theorizing it, and I see that in other decisions. I mean, I do see that in Clapper, and I understand Judge Millett that there is a long series of – a speculative chain in that case. But I take the court as saying that there – as addressing the speculative chain argument first and then saying, oh, by the way, you also can't manufacture injury by suggesting that there's some pocketbook harm that comes from that same speculative chain. So I think I'm trying to make the same – a similar point here, which is that you can't kind of have a redux of the same argument via economic harm. Make sure there's no additional questions. Okay. Thank you. Thank you, counsel. Mr. Lyon, we'll give you the two minutes that you asked for. Thank you, sir. With respect to the last point that counsel made regarding a speculative chill, this court has already addressed the question of what type of chill is sufficient to confer standing. And I would contrast Clapper and similar cases such as Laird v. Tatum with cases where this court has said the – if the statute is regulatory, prohibited, or compulsory. And this certainly falls within that area. Counsel suggested that Whole Women's Health suggests a higher bar for standing. I think that that is – that is simply not possible to discern from that case. Going back to the question of what is the standard, I would quote from Babbitt that a credible threat of prosecution exists when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative. And I certainly don't think that my client's concern with arrest is imaginary or wholly speculative here. We certainly do agree with Judge Millett's point that we've incurred financial costs to comply with this statute, and that that would constitute injury for standing as well. And lastly, we seriously question whether there is or should be a carve-out for First Amendment cases. The Supreme Court has made clear that the exception for standing in First Amendment cases is only for overbreadth cases, and that that is, quote, strong medicine. And there has never been a rationale either by the Supreme Court or this court to suggest that on other areas of standing that there should be a First Amendment exception. And I think that Bruin and McDonald and Whole Women's Health would certainly argue against such a point. Thank you, Counsel. Thank you, Your Honors. Thank you to both Counsel. We'll take this case under submission.
judges: Srinivasan; Millett; Edwards